1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   FERNANDO HERNANDEZ JR.,            CASE NO. CV 17-6441 SS

12                    Plaintiff,

13       v.                            **MEMORANDUM DECISION AND ORDER**

14   NANCY A. BERRYHILL, Acting
     Commissioner of Social
15   Security,

16                    Defendant.

17

18                                   **I.**

19                            **INTRODUCTION**

20

21       Fernando Hernandez Jr. ("Plaintiff") brings this action

22   seeking to overturn the decision of the Acting Commissioner of

23   Social Security (the "Commissioner" or "Agency") denying his

24   application for Supplemental Security Income ("SSI").  The parties

25   consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of

26   the undersigned United States Magistrate Judge.  (Dkt. Nos. 10,

27   12, 13).  For the reasons stated below, the Court AFFIRMS the

28   Commissioner's decision.

## II.

## PROCEDURAL HISTORY

On December 28, 2012, Plaintiff filed an application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act (the "Act") alleging a disability onset date of July 1, 2011. (AR 173-79). The Commissioner denied Plaintiff's application initially and on reconsideration. (AR 89-110). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on May 3, 2016. (AR 32-68, 127-29). The ALJ issued an adverse decision on June 29, 2016, finding that Plaintiff was not disabled because there are jobs that exist in significant numbers in the national economy that he can perform. (AR 13-26). On July 25, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-6). This action followed on August 30, 2017.

## III.

## FACTUAL BACKGROUND

Plaintiff was born on November 29, 1974. (AR 173). He was forty-one (41) years old when he appeared before the ALJ on May 3, 2016. (AR 34, 37). Plaintiff has an eighth-grade education. (AR 37). He is married and lives with his wife and two children. (AR 38, 173). Plaintiff previously worked as a landscaper. (AR 195). He alleges disability due to: leg tumor, ankle bone fusion, carpal tunnel syndrome, arthritis, diabetes, high cholesterol, high blood pressure, depression, bipolar disorder, and mania. (AR 206).

## A.   Plaintiff's Testimony

In March 2013, Plaintiff completed an Adult Function Report. (AR 216-24).  He acknowledged driving his wife to her carpool and his daughter to school every morning.  (AR 217).  He feeds and bathes his dog, which requires some bending.  (AR 217).  Plaintiff stated that he is able to do some household chores, including laundry, sweeping, and grocery shopping.  (AR 218-19).  He occasionally uses a cane to ambulate when he is in a lot of pain. (AR 222).

At his May 2016 hearing, Plaintiff testified that he is unable to work because of pain in his legs, knees, back, and hands.  (AR 46).  He also experiences numbness in his toes and feet.  (AR 50). When Plaintiff sits for long periods of time, he experiences pain in his lower extremities, which radiates up to his hips and back. (AR 40-41).

On a recent trip to Las Vegas, Plaintiff was able to sit for forty-five minutes to an hour before needing to stop and stretch. (AR 48-49).  He is able to drive his daughter to school.  (AR 41-42).  Plaintiff uses a cane "on occasions," but can generally walk around the block without it.  (AR 47).

Plaintiff is able to perform some light housework, including sweeping, vacuuming, mopping, and laundry.  (AR 42-43).  He can stand for twenty to thirty minutes before needing to sit or walk around.  (AR 49).  Plaintiff acknowledged regularly using cannabis

and cocaine to self-medicate his depression and insomnia. (AR 55-57). He also acknowledged drinking to excess on occasion. (AR 56-58).

**B.   Treatment History**

Plaintiff has a history of type II diabetes, with some peripheral neuropathy. (AR 284, 345, 495, 1072). The record indicates that Plaintiff's diabetes is largely controlled. (AR 394, 495, 774, 1072). He also has a history of a severe left ankle injury that necessitated an ankle fusion operation. (AR 389). As a result, Plaintiff developed osteoarthritis of the left subtalar joint. (AR 389-90, 392).

An August 8, 2012 x-ray of Plaintiff's left ankle revealed postsurgical changes in talotibial joint with fusion, deformity in the anterior calcaneus, and small plantar calcaneal spur. (AR 275). An August 31, 2012 CT scan uncovered a lesion ventral to and abutting the mid tibial shaft. (AR 271). In October 2012, Plaintiff complained of ankle swelling. (AR 327). An examination, however, was unremarkable. (AR 328). Plaintiff had normal range of motion with no atrophy, normal toe movement, normal strength, normal pulses, and normal Achilles reflex. (AR 328-29). Plaintiff presented to the emergency room in December 2012, complaining of right leg pain. (AR 283). On January 14, 2013, Plaintiff underwent a surgical lesion of the tibial lesion, which involved an excision of portions of his right tibia. (AR 298).

In March 2013, Plaintiff complained of pain in left foot, heel, and ankle. (AR 342). He walks with a limp and can walk only twenty minutes at a time before his ankle swells up. (AR 349). On examination, Plaintiff had pain with palpation of the plantar left heel, pain with range of motion of the ankle joint on dorsiflexion and plantar flexion, edema, pain with palpation of the fourth digit on the left foot, pain with palpation of the distal hallux on the left foot, 3/5 muscle strength bilaterally, pronation with gait cycle, increased resting calcaneal stance, and an antalgic and unstable gait. (AR 342-44). During March 2013, Plaintiff also complained of right knee pain. (AR 774). An x-ray of the right knee was normal. (AR 774). In May and June 2013, Plaintiff's ankle and foot pain was treated with pain medications. (AR 393-408).

From March to May 2013, Plaintiff treated with Thomas Neuman, D.P.M. (AR 389-92). On March 26, 2013, Dr. Neuman observed a marked limp in gait. (AR 389). Plaintiff reported that he intermittently uses a cane to aid in ambulation. (AR 389). On May 22, 2013, he complained of ongoing foot pain, with a burning sensation. (AR 393). Plaintiff had no range of motion in the left ankle as it was fused at negative 15 degrees of plantarflexion; limited subtalar joint range of motion available on the left with a full range of motion on the right; keratotic lesions at the lateral distal aspect of the fifth toes; bilateral foot pain of his lesion at the medial aspect of the distal interphalangeal joint of the fifth right toe; pinch calluses on the medial left hallux; and a marked limp in gait. (AR 389-90). X-rays indicated good

previous fusion of the left ankle joint and signs of degenerative joint disease in the subtalar left joint. (AR 389). Plaintiff was casted for an ankle and foot brace and extra-depth shoes for proper fitting with the brace. (AR 390).

In June 2013, Plaintiff complained of mild pain in his right ankle, which radiates to his right tibia and is exacerbated after long walks. (AR 402). An MRI was ordered. (AR 404). On July 9, 2013, an MRI of the left knee was unremarkable. (AR 405). The MRI of the right knee revealed a nine millimeter parameniscal cyst suggesting a small degenerative tear and grade one partial thickness chondrosis involving the lateral patellar facet. (AR 407). On July 24, 2013, Plaintiff complained of back pain. (AR 423). On examination, he was in no acute distress and had full range of motion of his spine. (AR 424). He was advised to take ibuprofen 800mg, three times daily. (AR 424).

On July 19, 2013, Dominic Sisto, M.D., completed a musculoskeletal assessment, after treating Plaintiff on a monthly basis from March to June 2013. (AR 409-11). Dr. Sisto diagnosed a medial meniscus tear, but with no atrophy present. (AR 409). He noted that Plaintiff's motor functions, including his gait, were within normal limits. (AR 410). Dr. Sisto opined that Plaintiff has no upper extremity limitations affecting Plaintiff's ability to lift or carry with a free hand; no limitations in reaching, handling, or fingering; and no fracture of the lower extremity. (AR 410-11).

A January 2014 x-ray of Plaintiff's right knee was normal with no acute, appearing fractures or abnormal joint spaces. (AR 772). In March 2014, Plaintiff complained of knee pain. (AR 755). On examination, a gait disturbance was noted and Plaintiff had right knee tenderness to palpation, some swelling, and pain on flexion. (AR 756-57). In April 2014, Plaintiff complained of persistent right knee pain, along with buckling and locking. (AR 771). An examination found marked joint line tenderness, medial McMurray's test distinctly positive, and painful range of motion. (AR 771). Torn posterior horn and medical meniscus and early osteoarthritis of the right knee was diagnosed. (AR 771). In June 2014, Plaintiff underwent arthroscopy, partial medial meniscectomy of the right knee and chondroplasty of patella, medial femoral condyle, and lateral tibial plateau of the right knee. (AR 736-37). Subsequent to surgery, x-rays of Plaintiff's knees in August 2014 were within normal limits. (AR 732). In September 2014, Plaintiff received an injection to address pain in his right knee. (AR 744).

In February 2015, Plaintiff's podiatrist diagnosed chronic ankle and foot degenerative joint disease, encouraged Plaintiff to wear his custom left foot and ankle brace, and informed him that there "were not really any other treatment options at this time." (AR 625). On April 13, 2015, the podiatrist instructed Plaintiff to continue using his ankle brace and limit activities to "as tolerated" and to "use wheelchair as needed." (AR 598). On April 20, 2015, an x-ray of the lumbar spine indicated mild spondylosis. (AR 733). Otherwise, the study was "within normal limits." (AR 733). By June and July 2015, his pain was being routinely managed

7

by medications.  (AR 544, 548, 554, 561).  On October 6, 2015, Plaintiff complained of knee pain.  (AR 537).  However, an x-ray of the right tibia-fibula revealed no acute fracture or subluxation.  (AR 735).  On October 27, 2015, Plaintiff complained of chronic hip and knee pain.  (AR 523).  On examination, Plaintiff had moderate pain with range of motion in his hip and knee.  (AR 528).  He was referred for additional injections to manage his pain.  (AR 528).  In November 2015, Plaintiff received a cortisone injection to address pain in his left hip.  (AR 746).

## C.    **State Agency Consultants**

On July 31, 2013, P.N. Ligot, M.D., a State Agency consultant, reviewed the medical evidence and opined that Plaintiff can lift or carry twenty pounds occasionally and ten pounds frequently.  (AR 81-83).  Dr. Ligot further opined that Plaintiff can stand or walk for two hours; can sit for more than six hours on a sustained basis; is limited in pushing and pulling in the lower extremities, especially the left with occasional pushing and pulling; can occasionally climb ramps and stairs; should never climb ladders, ropes, or scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl.  (AR 81-82).  Dr. Ligot concluded that Plaintiff should avoid concentrated exposure to extreme colds and hazards.  (AR 82).

Upon reconsideration on March 7, 2014, K. Beig, M.D., another State agency consultant, generally concurred with Dr. Ligot's assessment.  (AR 103-05).  However, Dr. Beig opined that Plaintiff

8

can stand, walk, or sit for six hours in an eight-hour workday with normal breaks. (AR 103). Dr. Beig also found that Plaintiff can occasionally climb ladders, ropes, and scaffolds, but never balance. (AR 103-04).

## IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

9

<ol start="2">
<li>(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.</li>
<li>(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.</li>
<li>(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.</li>
<li>(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.</li>
</ol>

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work

experience.  <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids").  <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE").  <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000) (citing <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act").  (AR 26).  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 28, 2012, the application date.  (AR 15).  At step two, the ALJ found that Plaintiff's diabetes mellitus with some peripheral neuropathy of the bilateral lower extremities, obesity, status left ankle fusion, ETOH abuse, mood disorder, and intermittent explosive disorder are severe impairments.[1]  (AR 15).  At step three, the ALJ determined that Plaintiff does not have an

_____

[1]    The ALJ found that Plaintiff's throat condition and back pain are medically determinable impairments but nonsevere.  (AR 15).

impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 16-18).

The ALJ then assessed Plaintiff's RFC and concluded that he can perform light work, as defined in 20 C.F.R. § 416.967(b),[2] except:

> [Plaintiff can] stand and or walk for six hours in an eight-hour workday with normal breaks; sit for six hours in an eight-hour workday with normal breaks; pushing and pulling is limited in the lower extremities, specifically the left lower extremity to occasional (foot controls); occasionally climb ramps, stairs, ladders, ropes, and scaffolds; should never balance; occasionally stoop, kneel, crouch, and crawl; should avoid concentrated exposure to extreme cold and hazardous machinery at unprotected heights; capable of simple repetitive work; should have limited public contact, which means that his necessary contact with the general public or customers is at most, brief, superficial, and intermittent[ ]; can sustain concentration, persistence, and pace for four

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

hours [*sic*] increments with customary work breaks; and
can interact and adapt accordingly.

(AR 18).  At step four, the ALJ found that Plaintiff is unable to
perform any past relevant work.  (AR 25).  Based on Plaintiff's
RFC, age, education, work experience, and the VE's testimony, the
ALJ determined at step five that there are jobs that exist in
significant numbers in the national economy that Plaintiff can
perform, including assembler, cleaner, and packager.  (AR 25-26).
Accordingly, the ALJ found that Plaintiff is not under a disability
as defined by the Act since December 28, 2012, the application
date.  (AR 28).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the
Commissioner's decision to deny benefits.  "[The] court may set
aside the Commissioner's denial of benefits when the ALJ's findings
are based on legal error or are not supported by substantial
evidence in the record as a whole." Aukland v. Massanari, 257 F.3d
1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see
also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing
Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than
a preponderance."  Reddick, 157 F.3d at 720 (citing Jamerson v.
Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant

evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VII.

### DISCUSSION

Plaintiff contends that the ALJ failed to: (1) properly consider Plaintiff's right lower extremity pain as a severe impairment; (2) properly consider the applicability of listing 1.03; and (3) conduct a proper RFC assessment. (Dkt. No. 17 at 2-8).

**A.    The ALJ Properly Considered Plaintiff's Lower Extremity Pain At Step Two Of The Evaluation**

Plaintiff contends that "[a]part from the diabetic peripheral neuropathy, the ALJ did not discuss or consider any severe impairment specific to Plaintiff's right lower extremity." (Dkt. No. 17 at 2). Plaintiff contends that because "the record

14

demonstrates that he suffers from substantial musculoskeletal pain in his right lower extremity," the ALJ "erred by failing to consider Plaintiff's right lower extremity pain as a severe impairment." (Id. at 3). The Court disagrees.

By its own terms, the evaluation at step two is a de minimis test intended to weed out the most minor of impairments. See Bowen v. Yuckert, 482 U.S. 137, 153–54 (1987) (O'Connor, J., concurring); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) ("We have defined the step-two inquiry as a de minimis screening device to dispose of groundless claims."). An impairment is not severe only if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work. Smolen, 80 F.3d at 1290.

Here, the ALJ found that Plaintiff's diabetes mellitus with some peripheral neuropathy of the bilateral lower extremities, obesity, status left ankle fusion, ETOH abuse, mood disorder, and intermittent explosive disorder are severe impairments. (AR 15). Peripheral neuropathy of the lower extremities necessarily encompasses pain of the right lower extremity. See Mayo Clinic, Peripheral Neuropathy, available at https://www.mayoclinic.org (last visited June 12, 2018) (peripheral neuropathy causes "weakness, numbness and pain" in the hands and feet, including "sharp, jabbing, throbbing, freezing or burning pain"). The ALJ also found that Plaintiff's status left ankle fusion is a severe impairment and results in swelling, limited range of motion, and moderate pain. (AR 15, 20, 22). Moreover, the ALJ discussed

Plaintiff's lower extremity pain throughout his decision. (AR 19-25).

Plaintiff has not met his burden to demonstrate that he has an _additional_ severe right lower extremity impairment, beyond the severe impairments the ALJ already acknowledged. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability. A claimant bears the burden of proving that an impairment is disabling.") (citations omitted). Plaintiff has not provided any evidence that his alleged "lower extremity pain" is a medically determinable impairment. Yuckert, 482 U.S. at 146 (The Act places "the burden of showing a medically determinable impairment on the claimant."); Edlund, 253 F.3d at 1159-60 (claimant must demonstrate "that he suffers from a medically determinable impairment [and] has the burden of proving that these impairments or their symptoms affect his ability to perform basic work activities"). Further, the State agency physicians, who reviewed Plaintiff's medical records did not find that his right lower extremity pain was a separate, severe impairment. (AR 79, 100). Plaintiff does not challenge the ALJ's finding that the State agency opinions are supported by the objective evidence and the record as a whole. (See AR 23-24).

Even if the ALJ erred, however, and should have found that Plaintiff's right lower extremity pain was a separate, severe impairment at step two, the error was harmless. See Marsh v. Colvin, 792 F.3d 1170, 1172 (9th Cir. 2015) (harmless error analysis applies to social security cases). Because "[s]tep two

is merely a threshold determination[,] . . . [i]t is not meant to identify the impairments that should be taken into account when determining the RFC." Buck v. Berryhill, 869 F.3d 1040, 1048–49 (9th Cir. 2017). Thus, a step-two error is harmless if the impairment was, in fact, considered in assessing the claimant's RFC. Id. at 1049 ("The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not.") (emphasis in original). Here, Plaintiff's lower extremity pain was taken into consideration in assessing Plaintiff's RFC, as more fully discussed below. Accordingly, where as in Buck, "all impairments were taken into account" in assessing Plaintiff's RFC, no remand is required. Id.

**B.** **Plaintiff's Impairments Do Not Meet Or Medically Equal Listing 1.03**

Plaintiff contends that he meets or medically equals the requirements of Listing 1.03. (Dkt. No. 17 at 3-6). He asserts that because the "record demonstrates that he has undergone reconstructive surgery of major weight-bearing joints in both lower extremities, and has been unable to return to effective ambulation in the subsequent years[,] . . . he fully satisfies the requirements of listing 1.03." (Id. at 4). The Court disagrees.

At the third step of the five-step process, the ALJ must determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix

17

1. 20 C.F.R. § 416.920(a)(4)(iii). If so, the claimant is presumed disabled and benefits are awarded. See Yuckert, 482 U.S. at 141; Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995), as amended (Apr. 9, 1996). A claimant has the burden to show that his condition meets or equals an impairment set forth in the Listing. See Tackett, 180 F.3d at 1098. To meet a listed impairment, a claimant must demonstrate that he meets each characteristic of a listed impairment relevant to his claim and must have every finding specified in the listing. See id. at 1099; 20 C.F.R. § 416.925(d). To equal a listed impairment, a claimant must establish "symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." Tackett, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526(a)); see also 20 C.F.R. § 416.926(a). Here, the ALJ determined that Plaintiff's impairments do not meet or medically equal any listed impairment. (AR 16-18).

Listing 1.03 is defined as reconstructive surgery or surgical arthrodesis of a major weight-bearing joint "with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. pt. 404, subpt. P, app. 1 , § 1.03. An "inability to ambulate effectively" means

an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is

18

defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(1).

Plaintiff has not met his burden to demonstrate that he meets each characteristic of Listing 1.03. He has not shown "an extreme limitation of the ability to walk," such that he requires the use of an assistive device that "limits the functioning of both upper extremities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(1) (emphasis added). At most, the medical evidence indicates that Plaintiff has a marked limp, wears a brace, uses a single cane occasionally, and could use a wheelchair as needed.[3] (AR 47, 342-44, 349, 389-90, 598, 625, 756-57). On the other hand, Plaintiff acknowledged being able to shop and walk around the block without the use of an assistive device. (AR 47, 218-19); cf. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(2) ("[E]xamples of ineffective ambulation include . . . the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, . . . [and] the inability to carry out routine ambulatory activities, such as shopping and banking . . . ."). There is no

_____

[3]  Following Plaintiff's surgery for removal of the tumor on his right tibia, he was prescribed the use of crutches during the post-operative recovery period. (AR 298). However, he ambulated with the crutches for a period of only two months. (AR 222).

evidence in the record that Plaintiff appeared at the hearing with an assistive device or routinely needed an assistive device to ambulate to his medical appointments.

Plaintiff argues that the ALJ failed to explicitly consider the applicability of Listing 1.03. (Dkt. No. 17 at 4). "[I]n determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990). However, "Marcia simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under [a particular] heading . . . ." Lewis v. Apfel, 236 F.3d 503, 513 (9th Cir. 2001). Moreover, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

Here, the ALJ found that "[t]he evidence does not support a finding that [Plaintiff] has the severity of the symptoms required either singly or in combination to meet or equal any medical listing, including those found under 1.00 . . . ." (AR 16). While the ALJ did not explicitly discuss Listing 1.03, he discussed Plaintiff's ability to effectively ambulate throughout his decision. (AR 19-25). Further, as the ALJ noted, "[n]o treating or examining physician has recorded findings equivalent in severity

to the criteria of any listed impairment." (AR 16). Nor did the State agency physicians opine that Plaintiff satisfies a listing. (AR 80, 102). Thus, the ALJ adequately addressed the third step of the evaluation, especially considering that Plaintiff did not present any evidence that established the requirements of Listing 1.03. See Kennedy v. Colvin, 738 F.3d 1172, 1178 (9th Cir. 2013) ("the ALJ adequately addressed the third step of the evaluation, given that [the claimant] never presented evidence or advanced an argument for equivalency"). Because Plaintiff does not meet the threshold requirements of Listing 1.00B2b, he cannot meet Listing 1.03, and no remand is required.

## C.  **The ALJ's RFC Assessment Is Supported By Substantial Evidence**

Plaintiff contends that the ALJ failed to properly assess his RFC. (Dkt. No. 17 at 6-8). He asserts that "the ALJ failed to properly consider all of the relevant medical findings and to explain the material inconsistencies between Plaintiff's records and the ALJ's findings regarding his ability to walk and stand." (Id. at 7). Specifically, Plaintiff argues that he is "significantly limited in his ability to ambulate," and the RFC should have included "the use of an assistive device on at least an occasional basis." (Id.).

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). An RFC assessment

requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, the ALJ considers all relevant evidence, including Plaintiff's subjective symptoms, and the RFC assessments made by consultative examiners, State agency physicians and medical experts. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); see also id. §§ 404.1513a, 416.913a; Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017). Further, "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); see 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity.").

The ALJ's RFC determination is supported by substantial evidence. First, there is sparse evidence that Plaintiff required a cane to ambulate. As the ALJ noted, Plaintiff acknowledged using a cane only "occasionally," and there is no evidence that he appeared at the hearing or ambulated to any of his medical appointments with an assistive device. (AR 47, 222, 389; see id. 19, 20). Further, the ALJ found that tests of Plaintiff's lower extremities were largely unremarkable. (AR 21-22, 24) (citing id. 328-29 (normal range of motion and strength in October 2012), 774 (March 2013 x-ray of right knee was normal), 405 (July 2013 MRI of left knee was unremarkable), 424 (normal range of motion of spine in July 2013), 410 (normal motor functions, including gait, in July 2013), 772 (January 2014 x-ray of right knee was normal), 732

(August 2014 x-rays of both knees were normal), 733 (April 2015 lumbar x-ray indicated mild spondylosis, but otherwise "within normal limits)).  The record indicates that Plaintiff's lower extremity issues were largely addressed with surgery, medications, and a foot and ankle brace.  (AR 389, 298, 393-408, 390, 424, 625, 732, 733, 735, 736-37, 744, 746).  Following Plaintiff's successful arthroscopic surgery on his right knee in June 2014, x-rays of both knees were normal, and Plaintiff's lower extremity pain was addressed with pain medications.  (AR 528, 544, 548, 554, 561, 732, 736-37, 746).  Thus, the ALJ properly concluded that "[Plaintiff's] symptoms were generally relieved with surgery and medication."  (AR 24; see id. 22).

Second, Plaintiff's activities of daily living belied his need for an assistive device.  Plaintiff acknowledged driving his wife to her carpool and his daughter to school every morning, but without a cane to ambulate to the car.  (AR 41-42, 217).  On a recent trip to Las Vegas, he was able to sit for forty-five minutes to an hour before needing to stand and stretch, but without need of an assistive device.  (AR 48-49).  Plaintiff is able to perform household chores, including laundry, sweeping, vacuuming, and mopping, without the use of an assistive device.  (AR 42-43, 218-19).  He regularly shops for groceries and is able to walk around the block without the need for a cane.  (AR 47, 218-19).  Thus, as the ALJ concluded, Plaintiff's daily activities are consistent with the assessed RFC.  (AR 21-22, 23, 24).

Finally, the ALJ did not find that Plaintiff has an unlimited ability to work. Instead, the ALJ evaluated the medical evidence, including many of Plaintiff's subjective complaints and his obesity, and restricted him to a limited range of light work, including only occasional use of his left lower extremity; only occasionally climbing ramps, stairs, ladders, ropes, and scaffolds; and never needing to balance.[4] (AR 18; see id. 19-20, 25).

Plaintiff contends that his "limited ability to stand and walk is supported by the State Agency medical consultant, Dr. Ligot, who determined that Plaintiff was limited to standing and walking for two hours in an eight-hour workday." (Dkt. No. 17 at 8). However, on reconsideration, another State agency medical consultant, Dr. Beig, found that Plaintiff could stand, sit, or walk six hours in an eight-hour workday, with normal breaks. (AR 103). Dr. Beig had the advantage of reviewing additional medical records, including Dr. Sisto's opinion that Plaintiff's motor functions, including his gait, were within normal limits. (AR 91, 104, 410). Further, subsequent to Plaintiff's successful arthroscopic surgery, x-rays were normal and his symptoms were largely controlled with medications, as discussed above. Thus, the ALJ properly concluded that Dr. Beig's opinion was "generally supported by the reported activities of daily living, treatment

---

[4] Plaintiff does not dispute the ALJ's finding that Plaintiff's subjective symptoms are not fully supported "by objective medical evidence, treatment received, activities of daily living, the medical opinions, and the entire record as a whole." (AR 25).

received, the objective evidence . . . , and the entire record as a whole."  (AR 24).

The ALJ has the sole authority to review medical and other record evidence and translate the evidence into work related functions.  20 C.F.R. § 404.1527(d)(2) (the "residual functional capacity" is an issue "reserved to the Commissioner").  Based on the evidence, the ALJ properly found that Plaintiff had the ability to perform a limited range of light work.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174-76 (9th Cir. 2008) (ALJ is responsible for translating claimant's impairments into work-related functions and determining RFC); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 2008) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (citation omitted).  Accordingly, the ALJ's RFC assessment is supported by substantial evidence, and no remand is required.

1

## VIII.

2

**CONCLUSION**

3

4      Consistent with the foregoing, IT IS ORDERED that Judgment be

5   entered AFFIRMING the decision of the Commissioner.  The Clerk of

6   the Court shall serve copies of this Order and the Judgment on

7   counsel for both parties.

8

9   DATED:  June 13, 2018

10

11

12

13                                    _____/S/_____
                                     SUZANNE H. SEGAL
14                                   UNITED STATES MAGISTRATE JUDGE

15  **THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW,
    LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**
16

17

18

19

20

21

22

23

24

25

26

27

28